UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____               │
│ DATE FILED: _7/5/2022_____           │
└─────────────────────────────────────┘

UNITED STATES OF AMERICA,

        -against-

20 Cr. 568 (AT)

JIAN LI,

       a/k/a "Jason Li,"

**ORDER**

                Defendant.

ANALISA TORRES, District Judge:

On October 20, 2022, a Manhattan grand jury returned a one-count indictment (the "Indictment") charging Defendant, Jian Li, with trafficking in counterfeit goods in violation of 18 U.S.C. §§ 2320(a)(1) and 2. Indictment, ECF No. 11. Defendant now moves to dismiss the Indictment on the ground that it violates his right to a representative jury under the Sixth[1] Amendment to the Constitution, and the Jury Selection and Service Act of 1968 (the "JSSA"), 28 U.S.C. § 1861 *et seq.* Def. Mot., ECF No. 31; Def. Mem. at 1, ECF No. 32. For the reasons stated below, the motion is DENIED.

**BACKGROUND**

I.    <u>Southern District of New York Jury Selection Procedure</u>

The JSSA establishes requirements that all federal district courts must follow in selecting jurors to serve on grand and petit juries, and requires courts to "devise and place into operation a written plan for random selection of jurors" in accordance with its requirements. *See* 28 U.S.C.

---

[1] Li's motion also vaguely references a violation of the Fifth Amendment's Equal Protection Clause, *see* Def. Mem. at 1, 4, but he does not brief any arguments in support of this claim, *see generally id.* The Court, therefore, need not address this claim. *United States v. Middlebrooks*, No. 21 Cr. 89, 2021 WL 2402162, at *2 n.3 (S.D.N.Y. June 10, 2021). Even if the Court were to address this argument, absent "intentional discrimination, a jury selection plan does not violate the Equal Protection Clause," and Defendant "present[s] no evidence whatever of any intentional discrimination." *Id.* (citing *United States v. Miller*, 116 F.3d 641, 659 (2d Cir. 1997)).

§ 1863(a).  The Southern District of New York's (the "Southern District") juror selection plan creates a separate jury "wheel" for each of its two divisions—Manhattan and White Plains—pursuant to the Amended Plan for the Random Selection of Grand and Petit Jurors in the United States District Court for the Southern District of New York (Feb. 13, 2009) (the "Jury Plan").[2] The master jury wheel for the Manhattan courthouse includes residents from New York, Bronx, Westchester, Putnam, and Rockland Counties, and the master jury wheel for the White Plains courthouse encompasses residents of Westchester, Putnam, Rockland, Orange, Sullivan, and Dutchess Counties.  Jury Plan § III(C).

Under this plan, jury venires are constructed as follows.  First, the Clerk of Court or a deputy (the "Clerk") compiles a roster of all individuals whose names appear on the voter registration list of each relevant county.  Jury Plan § III.A.  From this roster, a number of people—whatever is "deemed sufficient for a four-year period"—is chosen at random.  *Id.*  The selected names are placed on "[m]aster [w]heel[s]," *id.*, which are refilled every four years, *id.* § III.B.  Each county must be proportionally represented on the master wheel.  *Id.* § III.A.

When necessary, the Clerk chooses names randomly from the master wheel, and mails those individuals a questionnaire regarding their eligibility and availability for jury service.  *Id.* § III.D.  A person is qualified to serve on grand and petit juries unless he or she

> (1)  is not a citizen of the United States [who is] eighteen years old who has resided for a period of one year within the judicial district;
> (2)  is unable to read, write, and understand the English language with a degree of proficiency sufficient to fill out satisfactorily the juror qualification form;
> (3)  is unable to speak the English language;
> (4)  is incapable, by reason of mental or physical infirmity, to render satisfactory jury service; or
> (5) has a charge pending for the commission of, or has been convicted in a State or Federal court [of], a crime punishable by imprisonment for more than one year and his civil rights have not been restored.

---

[2] Available at https://nysd.uscourts.gov/sites/default/files/pdf/juryplan_feb_2009.pdf.

*Id.* § VII; *see also* 28 U.S.C. § 1865(b).[3]

When these questionnaires are returned, jury wheels are filled with the names and addresses of all eligible jurors, then separated into two qualified wheels for Manhattan and White Plains respectively.  Jury Plan § III(D); IV(B).  Jurors from Westchester, Putnam, and Rockland Counties are divided between the Manhattan and White Plans qualified wheels in a manner that "reasonably reflect[s] the relative number of registered voters in each county within the respective" master wheels.  *Id.* § IV(B).

To select jurors for grand or petit jury panels, the Clerk publicly and randomly draws the names of "as many persons as appear to be needed" from the qualified wheels.  *Id.* § IV(C).  The Clerk then randomly assigns jurors to specific jury panels for both trials and grand juries, as necessary.  *Id.*  Selected jurors then receive a summons at their "usual residence or business address" by first class, certified, or registered mail.  *Id.* § IV(D).

II.     Defendant's Indictment and Procedural History

Defendant was arrested on August 25, 2020.  8/25/2020 Dkt. Entry.  On October 22, 2020, a Manhattan grand jury returned an indictment against him, alleging that, between February and March 2020, Defendant was engaged in the trafficking of counterfeit goods—specifically, that he imported and distributed "cellphone products" bearing counterfeit trademarks of several luxury brands, including Gucci and Louis Vuitton.  Indictment ¶ 1; *see also* Def. Mem. at 2.

Defendant now moves to dismiss the Indictment, arguing (1) that his grand jury did not represent a fair cross-section of the community, in violation of the Sixth Amendment, and (2) that the grand jury selection process violated the JSSA.  Def. Mot.

---

[3] People may also be excused from jury service, or have such service deferred, based on age, childcare responsibilities, prior jury service in state or federal court, employment in emergency services, and undue hardship or extreme inconvenience.  Jury Plan § VI.

**DISCUSSION**

III.    <u>Sixth Amendment</u>

    A.    Legal Standard

The Sixth Amendment guarantees a defendant the right to a jury drawn from a fair cross-section of the community. *Taylor v. Louisiana*, 419 U.S. 522, 530 (1975).  In *Duren v. Missouri*, the Supreme Court set forth three elements a criminal defendant must establish to show a *prima facie* violation of the Sixth Amendment's fair cross-section requirement.  439 U.S. 357 (1979). Specifically, a defendant must show "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Id.* at 364.  The Government may rebut such a *prima facie* case by showing a "significant state interest" justifying the aspect of the jury selection process at issue. *See id.* at 368.

    B.    Application

Defendant contends that the systematic underrepresentation of Black and Latinx[4] individuals in the Southern District's jury lists deprived him of a grand jury "drawn from a fair cross-section" of the community.  Def. Mem. at 1–2.  The parties do not dispute that Black and Latinx people are distinctive groups, establishing the first element of the *Duren* test.  *Id.* at 5; Gov't Opp'n at 5, ECF No. 35.  *See United States v. Jackman*, 46 F.3d 1240, 1246 (2d Cir. 1995).  The Government argues, however, that Defendant has not established the second and

---

[4] In using the terms "Black" and "Latinx," the  Court adopts the meanings ascribed by the parties' experts to the terms "Black or African American" and "Hispanic or Latino."

third *Duren* elements.  Gov't Opp'n at 5–21.  Because the Court finds that Defendant has not established the third *Duren* element, systematic exclusion, it need not address the parties' arguments as to the second *Duren* factor, underrepresentation.  *See United States v. Suquilanda*, No. 21 Cr. 263, 2021 WL 3500868, at *3 (S.D.N.Y. Aug. 9, 2021).

Systematic exclusion is "usually the most difficult [element] to establish," and cases finding it are "few and far between."  *United States v. Barlow*, 732 F. Supp. 2d 1, 35 (E.D.N.Y. 2010), *aff'd*, 479 F. App'x 372 (2d Cir. 2012) (citation omitted).  To establish systematic exclusion, a defendant must show that "the underrepresentation is due to the system of jury selection itself, rather than external forces."  *United States v. Rioux*, 97 F.3d 648, 658 (2d Cir. 1996).  When the cause of exclusion is "an external force, not an inherent flaw within the Jury Plan," any underrepresentation is not "systematic."  *United States v. Tagliaferro*, No. 19 Cr. 472, 2021 WL 1172502, at *4 (S.D.N.Y. Mar. 29, 2021).  Moreover, "systematic exclusion does not occur simply because a facially neutral disqualification criterion disproportionately impacts a particular group."  *Barlow*, 732 F. Supp. 2d at 40.  And, a defendant cannot "make out a *prima facie* case merely by pointing to a host of factors that, individually or in combination, *might* contribute to a group's underrepresentation.  *United States v. Lawrence*, 553 F. Supp. 3d 131, 143 (S.D.N.Y. 2021) (quoting *Berghuis v. Smith*, 559 U.S. 314, 332 (2010)) (emphasis in original).

Defendant first argues that the "significant and persistent" underrepresentation of Black and Latinx jurors over a ten-year period alone demonstrates systemic exclusion.  Def. Mem. at 9.  This argument is unpersuasive.  "The law is clear that evidence of mathematical disparity, without more, is insufficient to make out a prima facie case of improper jury selection."  *Anderson v. Casscles*, 531 F.2d 682, 685 (2d Cir. 1976)*; see also Middlebrooks*, 2021 WL

2402162, at *3 (noting such an argument "conflates *Duren's* underrepresentation element with systematic exclusion" (citation and quotation marks omitted)).  Moreover, Defendant bears the burden of "isolat[ing] specific flaws in the Jury Plan and then prov[ing] that those flaws are what caused the underrepresentation at issue."  *Tagliaferro*, 2021 WL 1172502, at *3.

Defendant cites *United States v. Biaggi*, 909 F.2d 662 (2d Cir. 1990), and *Duren* for the proposition that a defendant "may establish . . . systematic exclusion by showing that the underrepresentation occurred over a significant time period."  Def. Mem. at 9.  But, this misstates the reasoning of these precedents.  In *Biaggi,* the Second Circuit affirmed the district court's dismissal of an indictment on Sixth Amendment grounds, and suggested in dicta that use of the "absolute numbers"[5] method employed by the district court can "imperil[]" the opportunity for a representative jury "if venires regularly lack even the small number of minorities necessary to reflect their proportion of the population."  909 F.2d at 678.  The *Biaggi* court did not, however, find that these disparities amounted to systematic exclusion, nor did it conclusively hold that a finding of systematic exclusion can be established solely by showing the persistence of disparities over time.  *See id.*

Similarly, although the Supreme Court noted in *Duren* that the underrepresentation of women in a Missouri jury pool was attributable to systematic exclusion, it found that the petitioner had independently demonstrated that such underrepresentation was "due to the operation of Missouri's exemption criteria . . . as implemented in Jackson County."  *Duren*, 439 U.S. at 366–67.  Neither *Duren* nor *Biaggi* support Defendant's contention that a showing of

---

[5] The "absolute numbers" or "absolute disparity" method refers to a statistical approach to assess compliance with the second prong of the *Duren* test, that is, underrepresentation, by measuring the "difference between the group's representation in the general population" and their representation in the jury pool.  *See Rioux*, 97 F.3d at 655.  The Second Circuit has endorsed the "absolute numbers" method as the most favored approach in assessing Sixth Amendment fair cross-section challenges.

underrepresentation over an extended period can alone support a finding of systematic exclusion. *See also Lawrence*, 553 F. Supp. 3d at 143.[6]

In his reply, Defendant argues that five aspects of the Southern District's Jury Plan result in the systematic exclusion of Black and Latinx prospective jurors: first, that the master wheel is drawn "exclusively from voter registration rolls," which themselves "underrepresent the number of jury-eligible Black and Latin[x] New Yorkers" ; second, that the district "only refills its master wheel every four years, which arbitrarily removes jury-eligible 18–21 year olds," and people who move frequently, from the prospective jury pool—both categories in which Black and Latinx voters are overrepresented compared to whites; third, that the Southern District removes inactive voters from the wheel, which "again disparately impacts Black and Latin[x] individuals;" fourth, that the jury administrator does not attempt to respond to questionnaires that are deemed undeliverable; and fifth, that the jury administrator does not contact jurors who fail to respond to questionnaires for any reason.  Def. Reply at 8–9, ECF No. 36.  None of these practices demonstrate systematic exclusion.

First, any arguments as to the Jury Plan's exclusive reliance on voter registration lists are unavailing, because the Second Circuit has expressly held that a "jury venire drawn from voter registration lists violates neither the Sixth Amendment's fair cross-section requirement, nor the Fifth Amendment's guarantee of equal protection," absent "positive evidence that some groups

---

[6] Defendant also appears to argue that systematic exclusion is established by the Southern District's continued adherence to the Jury Plan even after at least one court recommended amending the jury selection process in 1996 due to representational disparities of Black and Latinx jurors.  Def. Mem. at 10 (citing *United States v. Reyes*, 934 F. Supp. 553, 566 (S.D.N.Y. 1996)).  Although a failure to correct a known constitutional infirmity might be sufficient to establish systematic exclusion, *see Jackman*, 46 F.3d at 1244–47, the *Reyes* court specifically found that the representation of Black and Latinx jurors in venires was "sufficient," and held that the discrepancies did not violate the Sixth Amendment. *Reyes*, 934 F. Supp at 566.  This, again, does not establish systematic exclusion, because it only demonstrates a mathematical disparity that has persisted over time.  *Anderson*, 531 F.2d at 685.

have been hindered in attempting to register to vote"—which Defendant does not adduce. *Schanbarger v. Macy*, 77 F.3d 1424, 1424 (2d Cir. 1996) (per curiam).

Second, the remaining practices challenged by Defendant are facially neutral, and "only create[] underrepresentation, if any, to the extent the component[s] [are] affected by external forces." *United States v. Charles*, No. 20 Cr. 419, 2021 WL 2457139, at *4 (S.D.N.Y. June 16, 2021) (quotation marks omitted); *see also United States v. Scott*, 545 F. Supp. 3d 152, 167 (S.D.N.Y. 2021) (concluding that use of voter registration lists, refilling the master wheel on a four-year basis, and the removal of inactive voters are all facially neutral practices). For instance, Defendant argues—without any persuasive evidence—that the four-year master wheel replenishment cycle excludes communities of color, because they tend to move more frequently than white voters. Def. Reply at 8. Defendant similarly argues that exclusion of inactive voters—those presumed to have moved—"impacts Black and Latin[x] individuals," for the same reason. *Id.* But, as numerous courts have found, the cause of this exclusion—that is, people moving—is "an external force, not an inherent flaw within the Jury Plan." *Tagliaferro*, 2021 WL 1172502, at *4; *see also United States v. Schulte*, No. 17 Cr. 548, 2021 WL 1146094, at *8 (S.D.N.Y. Mar. 24, 2021) ("[T]he Court cannot charge the District's Jury Plan with a Sixth Amendment violation because of how often people move residences throughout the [d]istrict.").

Similarly, "[w]here questionnaires are undeliverable or are intentionally not returned by recipients, such circumstances are not the result of systematic exclusion"—rather, they are "plainly" attributable to "factor[s] external to the juror selection process." *Lawrence*, 553 F. Supp. 3d at 146; *see also Rioux*, 97 F.3d at 658 ("The inability to serve juror questionnaires because they were returned as undeliverable is not due to the system itself, but to outside forces, such as demographic changes."). As stated, Defendant cannot demonstrate systematic exclusion

8

where disparities are attributable to external forces, or where facially neutral criteria disproportionately impact a particular group. *Barlow*, 732 F. Supp. 2d at 40.

"In short, each key [aspect of the Jury Plan] identified by [Defendant] either does not directly create the complained-of underrepresentation or is an external force and not an inherent flaw with the [Jury Plan]." *United States v. Neilly*, No. 21 Cr. 94, 2021 WL 3913559, at *5 (S.D.N.Y. Sept. 1, 2021) (quotation marks and citation omitted).  Accordingly, because Defendant has not established the third *Duren* element, his motion to dismiss the Indictment as violative of the Sixth Amendment's fair cross-section requirement is DENIED.

IV.    Jury Selection and Service Act

    A.    Legal Standard

A court may dismiss an indictment against a defendant when "there has been a substantial failure to comply with the provisions of [the JSSA] in selecting the grand jury."  28 U.S.C. § 1867(d).  "Mere technical violations of [JSSA procedures] do not constitute substantial failure to comply."  *United States v. LaChance*, 788 F.2d 856, 864 (2d Cir. 1986) (quotation marks and citation omitted).  Rather, a "substantial failure" occurs when the violation "frustrates the policy objectives of the [JSSA], namely the random selection of jurors and the objective determination of juror disqualification, exemptions[,] and excuses."  *United States v. Purdy*, 946 F. Supp. 1094, 1104 (D. Conn. 1996); *see also LaChance*, 788 F.2d at 870 (holding that whether a violation is technical or substantial depends on "the nature and extent of its effect on the wheels and venire from which a defendant's grand jury was derived").  The *Duren* test applicable to Sixth

Amendment fair cross-section challenges also applies to fair cross-section challenges under the JSSA.  *See LaChance*, 788 F.2d at 864.

Defendant alleges violations of the JSSA based on exclusion from the Manhattan master wheel of (1) inactive voters; and (2) 3,333 Putnam County voters impacted by a "technical glitch."  Def. Mem. at 15–16.  The Court addresses these arguments in turn.

        B.       Inactive Voter Exclusion

Defendant premises a JSSA violation based on the exclusion of approximately 304,884 "inactive" voters—that is, individuals who are "still registered to vote," but are listed as "inactive because the county boards have received information, whether accurate or not, that the voter has moved."  *Id.* at 15 (quotation marks omitted).  Defendant argues that this exclusion violates (1) the JSSA policy that "all citizens" shall have the opportunity to be considered for service on juries, 28 U.S.C. § 1861; and (2) the JSSA requirement that "voter registration lists" be used to compile the relevant wheel.  *Id.* at 15–16.  Both arguments fail.  *See United States v. Allen*, No. 20 Cr. 366, 2021 WL 431458, at *10 (S.D.N.Y. Feb. 8, 2021).

First, the JSSA contemplates that the lists from which the master wheel will be drawn will be imperfect and that not all citizens technically eligible to serve on juries will be considered for the master wheel.  *See United States v. Cecil*, 836 F.2d 1431, 1445 (4th Cir. 1988) (collecting cases).  Indeed, the JSSA explicitly requires the use of voter registration lists, although not all citizens are registered to vote.  *Id.*  Therefore, though the exclusion of inactive voters may prevent some citizens from serving on juries, it does not amount to a violation of the JSSA.  *See Scott*, 545 F. Supp. 3d at 175.

Second, even crediting Defendant's argument that excluding inactive voters violates the JSSA because the Manhattan master wheel was not drawn from the full voter registration lists,[7] Defendant nevertheless fails to demonstrate that the violation is substantial.  The Government has shown that the exclusion of inactive voters decreased the percentage of Black individuals on the Master Wheel by 0.18 percentage points, and the percentage of Latinx individuals by 0.26 percentage points.  Siskin Decl. ¶ 35, ECF No. 35-1.  Defendant puts forth no evidence militating a contrary finding.  These miniscule discrepancies cannot be said to have such a significant effect on the wheel that it constitutes a "substantial" violation of the JSSA.  *See, e.g.*, *Lawrence*, 553 F. Supp. 3d at 148.[8]

C.    Alternate Mailing Address Voters

Finally, Defendant argues that, due to a "technical glitch," 3,333 voters from Putnam County who provided alternate addresses when registering to vote were not added to the master wheel.  Def. Mem. at 16.  Defendant contends that this omission is "no small or technical matter," *See id.* (quotation marks omitted).  But, Defendant's evidence establishes that the master wheel contains information for 2,569,803 people.  Martin Decl. ¶ 68, ECF No. 36-1.  The Government puts forth evidence to demonstrate that, absent this "glitch," an additional 56 jurors

---

[7] As other courts have found, however, the JSSA's legislative history "explains that the statute expresses a preference for the use of voter registration lists" because "they constitute the broadest and most accurate list of persons suitable for federal jury service."  *Lawrence*, 553 F. Supp. 3d at 147 (citation omitted).  Thus, even if the Jury Plan excludes individuals whose address information appears to be inaccurate, doing so is "entirely consistent" with the JSSA's purposes.  *Id.*

[8] Defendant's challenge could also be framed as a violation of the fair cross-section requirement, because he appears to be arguing that excluding inactive voters results in either underrepresentation of Black and Latinx individuals, or of "inactive voters" as a cognizable group.  These challenges are considered under the *Duren* test.  *Rioux*, 97 F.3d at 660.  As discussed, Defendant has not made out a *prima facie* case for a fair cross-section challenge based on the exclusion of Black and Latinx individuals.  Additionally, Defendant has not made out a *prima facie* case for a fair cross-section challenge based on the exclusion of inactive voters because there is no evidence that inactive voters as a group have "a basic similarity in attitudes or ideas or experience which is present in members of the group and which cannot be adequately represented if the group is excluded from the jury selection process," nor that the exclusion of the group would "result in partiality or bias on the part of juries hearing cases in which group members are involved."  *United States v. Guzman*, 337 F. Supp. 140, 143–44 (S.D.N.Y.), *aff'd*, 468 F.2d 1245 (2d Cir. 1972).

from Putnam County would have made it onto the qualified jury wheel, of which five would have been African-American, and one would have been Hispanic—that is, "correcting this clerical error would trivially increase the number of persons on the qualified jury wheel, and trivially lower the percent of persons . . . that were [Black] or [Latinx]."  Siskin Decl. ¶ 38. Again, Defendant does not put forth any persuasive evidence compelling a contrary finding.  The Court concludes, accordingly, that this exclusion amounts to a "technical violation" of the JSSA at best, which again, is not actionable.  *Lawrence*, 553 F. Supp. 3d at 148.

Neither of the defects alleged by Defendant constitute a substantial violation of the JSSA. Accordingly, the motion to dismiss the indictment as violative of the JSSA is DENIED.

## CONCLUSION

For the reasons stated above, Defendant has failed to show violations of either the Sixth Amendment or the JSSA.  Accordingly, his motion to dismiss the Indictment is DENIED.  The Clerk of Court is directed to terminate the motion pending at ECF No. 31.

SO ORDERED.

Dated: July 5, 2022
      New York, New York

_____
ANALISA TORRES
United States District Judge

12